## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## ST. LOUIS DIVISION

GENE GRASLE, on behalf of himself and all others similarly situated,

        Plaintiff,

vs.

MERCY HEALTH, MERCY HEALTH BENEFITS COMMITTEE, and JOHN DOES 1-20,

        Defendants.

Civil Action No.:  4:16-cv-0651

## COMPLAINT

Plaintiff Gene Grasle, by and through his attorneys, on behalf of himself and all others similarly situated, based on personal knowledge with respect to his own circumstances, and based upon information and belief pursuant to the investigation of his counsel as to all other allegations, alleges the following.

## INTRODUCTION

1.    This is a class action against Defendants Mercy Health (the "Company"),[1] the Mercy Health Benefits Committee (the "Committee"),[2] and John Does 1-20 (the "Committee

---

[1] Mercy Health was previously known as the Sisters of Mercy Health System.  *See* Consolidated Financial Statements and Supplementary Information, Mercy Health, Years Ended June 30, 2012 and 2011 ("2012 Consolidated Financial Statements"), at 8 ("Mercy Health, formerly known as (f/k/a) the Sisters of Mercy Health System, changed its name in fiscal 2012 to Mercy Health (Mercy) in an effort to better serve its patients and communities, as well as to honor the health system's heritage.").

[2] And/or any other committee with responsibility for managing/administering the Plan (defined below).

members") concerning the Mercy Health MyRetirement Personal Pension Account Plan (the "Plan").[3]

2.     As of June 30, 2011, the Plan was underfunded by $248.1 million.  *See* 2012 Consolidated Financial Statements, at 34.[4]  As the 2012 Consolidated Financial Statements explain, the pension liabilities represented 99% of this underfunded status.  *See id.* (noting that for 2012, the pension liabilities were $245,170,000 of the underfunded status of the Plan of $248,143,000).

3.     In just one year the underfunded status of the Plan grew by more than 47%, such that as of June 30, 2012, the Plan was underfunded by $365.7 million.  *See id.*  As the 2012 Consolidated Financial Statements explain, the pension liabilities represented 99% of this underfunded status.  *See id.* (noting that for 2012, the pension liabilities were $362,324,000 of the underfunded status of the Plan of $365,658,000).

4.     As of June 30, 2015, the Company reported pension liabilities of $344,983,000. *See* 2015 Annual Report, at 8.  Extrapolating from the information in the 2012 Consolidated Financial Statements for 2011 and 2012, upon information and belief, the 2015 pension liabilities of $344.9 million likely means that the Plan was underfunded by at least $340 million in 2015.[5]

---

[3] Upon information and belief, Mercy Health administers several pension plans for its employees.  *See* 2012 Consolidated Financial Statements, at 34 ("The following table sets forth the Plan's and certain other of the Health System's pension plans'… funded status at the measurement date.").  Plaintiff therefore brings this action on behalf of any defined benefit pension plan managed/administered by Defendants which they purport is a "Church Plan" under ERISA.

[4] Given that Mercy Health may administer more than one pension plan for its employees, *see supra* n.3, this shortfall amount may apply to one or more plans in addition to the Plan.

[5] Assuming the same 99% figure, the 2015 pension liability amount of $344,983,000 translates to an underfunded status of $341.5 million for 2015.

5.      Defendants excuse the severe underfunding on the grounds that the Plan is a "church plan" and therefore is exempt from the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

6.      To the contrary, as described herein, the Plan does not meet ERISA's requirements for the "church plan" exemption because it was not "established," and is not "maintained" by a church.  Rather, the Plan was established and is maintained by Mercy Health, which is a business – not a church or a convention or association of churches.

7.      Consequently, the Plan is governed by all of the funding, fiduciary, and notice requirements of ERISA.  This action seeks to require Defendants to comply with all of those requirements, and to pay damages and penalties as a result of their past failures to do so.

## JURISDICTION AND VENUE

8.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

9.      This court has personal jurisdiction over Defendants because they are headquartered and transact business in, or reside in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.

10.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

### Plaintiff

11.     Plaintiff Gene Grasle is a citizen and resident of Imperial, Jefferson County, Missouri.  Plaintiff Grasle was employed by Mercy Health for thirty one years, beginning in 1982 when Plaintiff Grasle commenced employment with Health Consultants, which was acquired by St. Johns Mercy Medical Center in or around 1989, which later became Mercy Health Care in/around 2006.  During his employment with Mercy Health, Mr. Grasle served in various roles including home health care delivery, courier/logistics, and both part-time and full-time in the security department, before his retirement in April 2013.  Plaintiff Grasle is a current participant in the Plan.

### Defendants

12.     Defendant Mercy Health is a 501(c)(3) non-profit corporation organized under the laws of Missouri.  *See* 2012 Consolidated Financial Statements, at 8.  Defendant Mercy Health is headquartered in Chesterfield, Missouri.  Upon information and belief, Defendant Mercy is the Plan sponsor.  *See* Mercy Annual Report for the fiscal year ending June 30, 2015 ("2015 Annual Report") (available at http://emma.msrb.org/ES742457-ES581977-ES977837.pdf), at 2 noting that the Plan is "sponsored by Mercy").

13.     The Committee is an unincorporated association, which, upon information and belief, is the Plan Administrator and/or named fiduciary.

14.     John Does 1-20 are the individual members of the Committee and members of any other committee(s) which administer the Plan.  The identity of the members of the Committee, and any of the other committee(s) which was or were responsible for carrying out the provisions of the Plan, is currently not known.  Upon information and belief, John Does 1-20 are senior executive

officers of the Company who knew or should have known the facts alleged herein.  The Committees and John Does 1-20 are hereafter collectively referred to as the "Committee Defendants."

## CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the class (the "Class") defined as follows:

> All participants in and beneficiaries of the Mercy Health MyRetirement Personal Pension Account Plan (the "Plan").[6] Excluded from the Class are Defendants and any individuals who are subsequently to be determined to be fiduciaries of the Plan.

16.    The members of the Class are so numerous that joinder of all members is impractical.  Upon information and belief, the Class includes thousands of persons.

17.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members, arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

18.    There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

A.    Whether the Plan is covered by ERISA;

B.    Whether the Plan Administrator failed to comply with ERISA's reporting and disclosure provisions;

---

[6] As noted above, *see supra* n.3, upon information and belief, Mercy Health administers several pension plans for its employees.  *See* 2012 Consolidated Financial Statements, at 34 ("The following table sets forth the Plan's and certain other of the Health System's pension plans'… funded status at the measurement date.").   Plaintiff therefore brings this action on behalf of any defined benefit pension plan managed/administered by Defendants which they purport is a "Church Plan" under ERISA.

       C.      Whether Defendants failed to fund the Plan and establish a funding policy to fund the Plan in compliance with ERISA; and

       D.      Whether the Defendant-fiduciaries breached their fiduciary duties in failing to comply with the provisions of ERISA set forth above.

19.    Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of ERISA class action litigation.  Plaintiff has no interests antagonistic to those of other members of the Class.  Plaintiff is committed to the vigorous prosecution of this action, and anticipates no difficulty in the management of this litigation as a class action.

20.    This action may be properly certified under either subsection of Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant.  Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

21.    In the alternative, certification under Rule 23(b)(2) is warranted because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

22.    In the alternative, certification under Rule 23(b)(3) is also appropriate.  A class action is superior to other available methods for the fair and efficient adjudication of the

controversy within the meaning of Rule 23(b) and in consideration of the matters set forth in Rule 23(b)(3)(A)-(D).  Because of the amount of the individual Class members' claims relative to the complexity of the litigation and the financial resources of the Defendants, few, if any, members of the Class would seek legal redress individually for the wrongs complained of herein.  The maintenance of separate actions would place a substantial and unnecessary burden on the courts, and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.  Absent a class action, Class members will continue to suffer damages, and Defendants' misconduct will proceed without remedy.

## SUBSTANTIVE ALLEGATIONS

A.     **Defendant Mercy Health's Business**

23.     Mercy Health is a not for profit healthcare conglomerate that operates in Arkansas, Kansas, Missouri and Oklahoma.  *See*:  https://www.mercy.net/about/transforming-the-health-of-our-communities.

24.     The Company includes "46 acute care and specialty (heart, children's, orthopedic and rehab) hospitals, more than 700 physician practices and outpatient facilities, 40,000 co-workers and more than 2,000 Mercy Clinic physicians" in four states.  *Id.*

25.     According to the 2012 Consolidated Financial Statements, Mercy is comprised of the following corporations and their subsidiaries:

- Mercy Health Fort Smith Communities (f/k/a St. Edward Mercy Health System, Inc.), Fort Smith, Arkansas

- Mercy Health Hot Springs Communities (f/k/a St. Joseph's Mercy Health System, Inc.), Hot Springs, Arkansas

- Mercy Health Northwest Arkansas Communities (f/k/a Mercy Health System of Northwest Arkansas, Inc.), Rogers, Arkansas

- Mercy Health East Communities (f/k/a St. John's Mercy Health Care), St. Louis, Missouri

- Mercy Health Springfield Communities (f/k/a St. John's Health System, Inc.), Springfield, Missouri

- Mercy Health Oklahoma Communities, Inc. (f/k/a Mercy Health System, Inc.), Oklahoma City and Ardmore, Oklahoma

- Mercy Ministries of Laredo, Laredo, Texas

- Mercy Health Southwest Missouri/Kansas Communities (f/k/a Mercy Health System-Joplin, Inc.), Joplin, Missouri, and Independence and Fort Scott, Kansas

*See* 2012 Consolidated Financial Statements, at 8-9.

26.     The Company provides economic impact reports for each state in which it provides health care services.  *See* https://www.mercy.net/about/economic-impact.  It is "the largest multi state [sic] provider in the Central Midwest." *See* The Economic Impact of Mercy of the State of Oklahoma, at 1 (available at https://www.mercy.net/sites/default/files/files/oklahoma-economic-impact1-5714.pdf).

27.     In Oklahoma, the Company's economic impact for fiscal year 2011 was $1.2 billion through 70 state-wide facilities including 11 hospitals.  *Id*.

28.     In Arkansas, the Company's economic impact was $871 million, through 7 hospitals and a series of clinics throughout the state.  *See* The Economic Impact of Mercy on Arkansas, at 1 (available  at.https://www.mercy.net/sites/default/files/files/arkansas-economic-impact-5714.pdf).

29.     In Kansas, the Company's economic impact was $104.4 million, through 3 hospitals and a number of clinics.  *See* The Economic Impact of Mercy on Kansas, at 1 (available at https://www.mercy.net/sites/default/files/files/kansas-economic-impact-5714.pdf).

30.     In Missouri, where Mercy Health is headquartered, the Company's impact for fiscal year 2010 was $4.2 billion, where it provides comprehensive medical care throughout the state, while also drawing patients from Illinois, Kansas, Arkansas and Oklahoma.  *See* The Economic Impact of Mercy on the State of Missouri, at 1 (available at https://www.mercy.net/sites/default/files/files/missouri-economic-impact1-5714.pdf).

31.     As the Company states, "Mercy focuses on the well-being of communities it serves by providing efficient, high quality, accessible health care."  *Id*.

32.     The Company is not, and does not claim to be a church.

33.     In 2012, the Company changed its name from Sisters of Mercy Health System to Mercy Health "in an effort to better serve its patients and communities, as well as to ***honor the health system's heritage***."  *Id*.  *See also* 2012 Consolidated Financial Statements, at 8 (same).

34.     Mercy Health's focus on healthcare is further confirmed by the Company's statement regarding its vision, which provides:

> Together, we are pioneering a new model of ***care***.  We will relentlessly pursue our goal to get ***health care*** right.  Everywhere and every way that Mercy serves, we will deliver a transformative ***health*** experience.

*See* https://www.mercy.net/about/bringing-healing-ministry-to-life (emphasis added).

35.     Mercy Health's Senior Leadership team is comprised of 14 lay people without any clergy serving on the team.  These individuals include:

- James (Lynn) Britton – President/Chief Executive Officer

- Michael McCurry – Executive Vice President/Chief Operating Officer

- Shannon Sock – Executive Vice President, Strategy/Chief Financial Officer

- Fred Ford – Senior Vice President, Ambulatory Care

- Joseph Kelly – Senior Vice President/Chief Marketing Officer

- Linda J. Knodel – Senior Vice President/Chief Nursing Officer

- Cynthia Mercer – Senior Vice President/Chief Administrative Officer

- Vance Moore – Senior Vice President, Operations

- Brian O'Toole, Ph. D. – Senior Vice President, Mission and Ethics

- Diana Smalley, FACHE – Regional President, West Communities

- Donn Sorensen – Regional President, East Communities

- Jon Swope – Regional President, Central Communities

- Jon Vitiello – Senior Vice President, Financial Operations

- Philip D. Wheeler – Senior Vice President, General Counsel

*See* 2015 Annual Report, at 5-7.

36.     Mercy Health funds its healthcare business with over $850 million of government bonds, issued by the Health and Educational Facilities Authority of the State of Missouri, the Arkansas Development Finance Authority, and the Oklahoma Industrial Finance Authority, which is obviously not church funding.  *See* 2012 Consolidated Financial Statements, at 42-44; *see also* http://emma.msrb.org/Search/QuickSearch.aspx?cusip=60635R.

37.     Moreover, consistent with it being a healthcare conglomerate, Mercy Health recognizes annual net patient service revenue in the billions:  $3.6 billion in 2013, $3.9 billion in 2014, and $4.3 billion in 2015.  *See* 2015 Annual Report, at 9.  The sources of these revenues include Medicare, Medicaid, and Managed Care Providers, sources which fund only health care activities.  *Id*. at 10.

38.     Despite its status as an ERISA plan, the Company has invoked Church Plan status to evade ERISA's protections to which its employees are entitled.

39.     The Company's failure to treat the Plan as an ERISA plan puts the Plan's participants at risk of receiving pension payouts drastically lower than those proposed, and deprives Plan participants of material information as alleged below.

40.     Moreover, by avoiding ERISA's requirements, the Company obtains a competitive advantage over the other nonprofit healthcare entities that comply with ERISA.

B.      **The Plan**

(1)     **Mercy Health MyRetirement Personal Pension Account Plan Overview**

41.     The Plan was established and is maintained by the Company to provide retirement income to employees.  *See* 2012 Consolidated Financial Statements, at 34 ("Mercy provides various non-qualified defined benefit retirement plans to provide retirement income").  Thus, the Plan was not established and is not maintained by a church or convention or association of churches.

42.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A).

43.     The Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

44.     Upon information and belief, at all relevant times, the Committee Defendants have been the administrators of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  They have also been fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because they have exercised authority or control respecting

management or disposition of Plan assets, or have had discretionary authority or discretionary responsibility in the administration of the Plan.

45.     The Company is a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) because it has exercised authority or control respecting management or disposition of Plan assets, or has had discretionary authority or discretionary responsibility in the administration of the Plan.

46.     In particular, the Company, acting through its Board of Directors, officers, and employees, is responsible for all of the acts alleged herein.

47.     Additionally the Company has also been a party-in-interest under ERISA § 3(14), 29 U.S.C. § 1002(14), both because it is a fiduciary and because it is an employer whose employees are covered by the Plan.

### (2)     The Mercy Health MyRetirement Personal Pension Account Plan is not a "Church Plan" under ERISA

48.     Mercy Health claims that the Plan is a "church plan."

49.     Despite this claim, the Plan is not an ERISA "Church Plan."

50.     As alleged above, several factors demonstrate that Mercy Health is not a church or conventions or association of churches.  *See* ¶¶ 23-40.

51.     The principal purpose of Mercy Health is to provide health care services, not to operate a pension system.

52.     Under Section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan must be both *established* and *maintained* by a *church* or by a convention or association of churches to qualify for the church plan exception.

53.     The Plan was *established* by the Company or its predecessors, not by a church or convention or association of churches.

12

54.     The Plan is ***maintained*** by the Company, not by a church or convention or association of churches.

55.     Additionally, Section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), provides that a plan maintained by a church or a convention or association of churches includes a plan

> ***maintained*** by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

56.     The principal purpose of Mercy Health is to provide healthcare services, not to operate a pension system.

57.     Since the Plan is maintained by a healthcare company, the Plan is ***not*** maintained by "an organization … the principal purpose of which is the administration or funding of a plan or program for the provision of retirement benefits…."  11 U.S.C. § 1002 (33)(C)(i).

58.     Moreover, the Plan is not maintained for employees of any church or convention or association of churches; it is maintained for employees of the Company **– *a health care system***.

### C.     Defendants' Breaches of Fiduciary Duties

#### (1)     Defendants Breached their Fiduciary Duty to Ensure the Plan is Fully Funded

59.     Under ERISA, the Plan must have an annual actuarial report addressing the Plan's funding needs.

60.     Defendants are further required to fund the Plan each year according to a funding plan that meets the funding standards of ERISA and is based on reasonable actuarial assumptions. *See* ERISA §§ 302, 303, 29 U.S.C. §§ 1083, 1083.

61.     Defendants are responsible for setting the funding requirements and the funding policy for the Plan.

62.     Defendants failed to set a funding policy that will adequately fund the anticipated obligations of the Plan or fund the Plan.

63.     As of June 30, 2011, the Plan was $248.1 million underfunded, with pension liabilities recorded at $245.1 million.  *See* 2012 Consolidated Financial Statements, at 34.

64.     As of June 30, 2012, the Plan was $365.7 million underfunded, with pension liabilities recorded at $362.3 million.  *Id*.

65.     As of June 30, 2013, Mercy Health reported pension liabilities of $313.1 million. *See* 2015 Annual Report, at 8.

66.     As of June 30, 2014, the Company reported pension liabilities of $298.4 million. *Id*.

67.     As of June 30, 2015, the Company reported pension liabilities of nearly $345 million. *Id*.

68.     As discussed above, upon information and belief, the Plan remains underfunded to at least the extent of the recorded pension liabilities.

### (2)     Defendants Breached their Fiduciary Duty to Avoid Conflicts of Interest

69.     By continuing to set an inadequate funding policy which, upon information and belief, has resulted in the Plan becoming underfunded by approximately ***three hundred and forty million dollars*** as of June 30, 2015, Defendants have acted at all times in the interest of the Company, and have not acted solely in the interests of the Plan participants as is required of a fiduciary under ERISA.

70.     Mercy Health benefits from Defendants' decision not to fund the Plan adequately, and Defendants have a conflict of interest that prevents them from carrying out their fiduciary duties in a manner consistent with ERISA.

71.     Despite this conflict of interest, Mercy Health has failed to appoint fiduciaries who could carry out their duties to protect the Plan's participants in a manner consistent with ERISA or to take other appropriate steps to address the conflict.

72.     As a result of this conflict of interest, and in light of Defendants' repeated and ongoing breaches of fiduciary duties, the Court should appoint an independent fiduciary who can protect the interests of Plan participants and carry out his or her duties consistent with ERISA.

**FIRST CLAIM FOR RELIEF**
**Declaratory and Equitable Relief**
**(Declaratory Judgement Act and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

73.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

74.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to:  "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

75.     Pursuant to this provision, 28 U.S.C. § 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Plan is not a "church plan" within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus subject to the provisions of Title I and Title IV of ERISA.

76.     Plaintiff further seeks orders directing all Defendants to bring the Plan into compliance with ERISA, including the reporting and funding requirements of ERISA, 29 U.S.C. §§ 1021, 1023, 1082, 1102, and 1104, and by remedying the additional violations set forth below.

77.     Additionally, Plaintiff seeks an order that Mercy Health make all contributions to the Plan as necessary to remedy the Plan's funding shortfall.

**SECOND CLAIM FOR RELIEF**
**Violation of Reporting and Disclosure Provisions**
**(ERISA §§ 101-104, 502(a)(1)(A), (a)(3), 29 U.S.C. §§ 1021-1024, 1132(a)(1)(A), (a)(3))**

78.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

79.     ERISA § 502(a)(1)(A), 29 U.S.C. 1132(a)(1)(A), permits a plan participant to bring a suit for penalties when a defendant violates the recordkeeping obligations set forth in ERISA.

80.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**A.     Annual Reports**

81.     Under ERISA § 103, 29 U.S.C. § 1023, employee benefit plans are required to file an annual report with the Secretary of Labor.  This report, submitted via Form 5500, must include certain specified information about the plan's finances, participants, and administration.

82.     Defendants failed to file an annual report concerning the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Form 5500 and associated schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

83.     Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Forms 5500 and associated schedules and attachments.

**B.     Notification of Failure to Meet Minimum Funding Standards**

84.     Under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), employers maintaining employee benefit plans are required to issue a notice to beneficiaries and participants whenever the plan fails to make a required installment or other payment required to meet the minimum funding standards under ERISA.

85.     Mercy Health has failed to furnish the Plaintiff or any member of the Class with a Notice with respect to the Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Mercy Health failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082.

**C.     Funding Notices**

86.     Under ERISA § 101(f), 29 U.S.C. § 1021(f), administrators of defined benefit plans are required to provide annual plan funding notices to all participants and beneficiaries of such defined benefit plans.

87.     At no time has the Committee furnished Plaintiff or any member of the Class with a Funding Notice with respect to the Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

88.     As the Administrator of the Plan, the Committee has violated ERISA § 101(f), 29 U.S.C. § 1021(f), by failing to provide each participant and beneficiary of the Plan with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f), and as such may be required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by 29 C.F.R. §

2575.502(c)(3)) for each day that the Committee has failed to provide Plaintiff and each Class member with the Funding Notice required by ERISA § 101(f), 29 U.S.C. § 1021(f).

**THIRD CLAIM FOR RELIEF**
**Failure to Provide Minimum Funding**
**(ERISA §§ 302 and 502(a)(3), 29 U.S.C. §§ 1082, 1132(a)(3))**

89.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

90.     ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

91.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

92.     As the employer maintaining the plan, Mercy Health was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with ERISA's requirements.

93.     Mercy Health has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

94.     By failing to make the required contributions to the Plan, Mercy Health has violated ERISA § 302, 29 U.S.C. § 1082.

95.     As a result of the failure of Mercy Health to fund the Plan in accordance with ERISA's minimum funding standards, Plaintiff faces substantial risk of their pensions being lost or severely reduced.

**FOURTH CLAIM FOR RELIEF**
**Failure to Establish the Plan Pursuant to a Written Instrument Under ERISA**
**(ERISA §§ 402, 502(a)(3), 29 U.S.C. §§ 1102, 1132(a)(2))**

96.     Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

97.     ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will, among other things, "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

98.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

99.     The Plan has not been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

100.    As Mercy Health has been responsible for maintaining the Plan and has amendment power over the Plan, it violated § 402, 29 U.S.C. § 1102, by failing to promulgate written instruments in compliance with these sections to govern the Plan operation and administration.

**FIFTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 404, 409, 502(a)(2), 29 U.S.C. §§ 1104, 1109, 1132(a)(2))**

101.    Plaintiff re-alleges and incorporates herein by reference all prior allegations in this Complaint.

102.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries, and defraying reasonable expenses of administering the plan, and with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

103.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits the fiduciary made through the use of the plan's assets.  ERISA § 409 further privies that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

104.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

105.    As a fiduciary of the Plan, Defendants had the duty to comply with and enforce the provisions of ERISA alleged above.

106.    Defendants have not complied with and/or enforced any of the provisions of ERISA set forth above with respect to the Plan.

107.    By failing to enforce the provisions of ERISA set forth above, Defendants have breached their fiduciary duties.

108.    The failure of Defendants to create and enforce adequate funding policies for the Plan, and properly fund the Plan, has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and this failure has profited Mercy Health by providing it the use for its general business purposes of money that it should have paid to the Plan.

109.    Plaintiff is entitled to recover those losses on behalf of the Plan.

## JURY DEMAND

110.    Plaintiff demands a jury.

## PRAYER FOR RELIEF

111.    WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.      Certifying this action as a class pursuant to FED. R. CIV. P. 23;

B.      Declaring that the Plan is an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33);

C.      Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, requiring Defendants to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan's participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Title I of ERISA;

D.      Requiring Defendants to make the Plan whole for all contributions that should have been made pursuant to ERISA funding standards, and for interest and investment income on such contributions, and requiring Defendants to disgorge any profits accumulated as a result of their fiduciary breaches;

E.      Granting a preliminary and permanent injunction removing Defendants as Plan fiduciaries, and appointing one or more independent fiduciaries to hold the Plan assets in trust, to manage and administer the Plan and its assets, and to enforce the terms of ERISA;

F.      Requiring the Mercy Health MyRetirement Personal Pension Account Plan to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it

failed to inform Plaintiff and each Class member of its failure to fund the Plan in accordance with ERISA's requirements;

G.      Requiring Mercy Health to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member with a Funding Notice;

H.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA, with respect to the Plan;

I.      Awarding, declaring, or otherwise providing Plaintiff and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper, and such appropriate equitable relief as the Court may order, including an accounting, surcharge, disgorgement of profits, equitable lien, constructive trust, or other remedy; and

J.      Awarding to Plaintiff's counsel attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

Dated:  May 10, 2016          Respectfully submitted,

**DYSART TAYLOR COTTER**
  **MCMONIGLE & MONTEMORE, P.C.**

_/s/ Don R. Lolli_
Don R. Lolli            #56263MO
4420 Madison Avenue, Suite 200
Kansas City, MO  64111
Telephone:  (816) 931-2700
Facsimile:  (816) 931-7377
Email:  dlolli@dysarttaylor.com

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko
(_pro hac vice_ motion to be filed)
Mark K. Gyandoh
(_pro hac vice_ motion to be filed)
Julie Siebert-Johnson
(_pro hac vice_ motion to be filed)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email:  eciolko@ktmc.com
Email:  mgyandoh@ktmc.com
Email:  jsjohnson@ktmc.com

**IZARD NOBEL LLP**
Robert A. Izard
(_pro hac vice_ motion to be filed)
Mark P. Kindall
(_pro hac vice_ motion to be filed)
Douglas P. Needham
(_pro hac vice_ motion to be filed)
29 South Main Street
Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email:  rizard@izardnobel.com
Email:  mkindall@izardnobel.com
Email:  dneedham@izardnobel.com

**_Counsel for Plaintiff_**